**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CLINT A. DAVIS,                                Case No. 1:13-cv-64

      Plaintiff,                              Barrett, J.
                                                   Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Clint A. Davis filed this Social Security appeal in order to challenge the Defendant's determination that he is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes.  As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

This proceeding involves Plaintiff's appeal of the 2011 denial of his most recent application for Supplemental Security Income ("SSI").

Plaintiff first applied for both Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in January 2007, alleging disability due to a combination of mental and physical impairments, with a disability onset date of August 23, 2005.  On that date, Plaintiff was hit in the head with a baseball bat, suffering a head injury.  After his applications were denied initially and upon reconsideration, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An

evidentiary hearing was held in September 2009, at which Plaintiff was represented by counsel. On October 20, 2009, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled. (Tr. 93-103). The Appeals Council rejected Plaintiff's appeal of that decision, and Plaintiff, through the same counsel who currently represents him, sought further appeal in this Court. *Davis v. Com'r of Soc. Sec.*, Case No. 1:10-cv-599. In his prior appeal, Plaintiff did not challenge the ALJ's determination that he retained the residual functional capacity ("RFC") to perform a limited range of work at the medium exertional level. Instead, Plaintiff challenged only the mental limitations as determined by the ALJ, and in particular, the rejection of a September 2009 report by a consulting psychologist. (Doc. 15 at 4, Case No. 1:10-cv-599). On July 28, 2011, the undersigned filed a Report and Recommendation ("R&R"), finding no error and recommending that the Commissioner's non-disability decision be affirmed. *Id.* The presiding district judge adopted that R&R as the decision of the Court on August 22, 2011. *Id.*, Doc. 16.

On December 15, 2009, while the appeal process concerning the ALJ's first adverse decision was still pending, Plaintiff filed a new application solely for SSI, alleging the same disability onset date of August 23, 2005. His disability onset date was subsequently amended to October 21, 2009, the day after the prior ALJ decision. After his December 2009 application was denied initially and upon reconsideration, Plaintiff again requested an evidentiary hearing. The same ALJ presided over Plaintiff's second evidentiary hearing, at which both Plaintiff and a vocational expert testified. On August 31, 2011, ALJ Larry Temin issued a written decision, once again concluding that Plaintiff is not disabled. (Tr. 11-21).

At the time of the ALJ's more recent decision, Plaintiff was 45 years of age. Based upon the record and testimony presented, the ALJ's 2011 decision found the following severe impairments: "status post August 23, 2005 head injury; lumbar spondylosis/scoliosis/strain; thoracic spondylosis/scoliosis/strain; affective disorder; anxiety disorder; and dementia." (Tr. 13). The ALJ concluded that none of Plaintiff's impairments, either alone, or in combination, met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14). Based on the record, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a limited range of light work,[1] further restricted as follows:

> He can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for up to 6 hours in an 8-hour workday and he can sit for up to 6 hours in an 8-hour workday. He can only occasionally stoop, kneel, crouch, and climb ramps or stairs. He should not crawl, climb ladders, ropes, or scaffolds, work at unprotected heights or work around hazardous machinery. He cannot engage in sustained reading, i.e., not more than 5 to 10 minutes per hour. The claimant is able to perform only simple, routine, repetitive tasks. He can remember and carry out only short and simple instructions. He cannot interact with the general public, and cannot interact with coworkers or supervisors more than occasionally. He cannot work at a rapid production-rate pace, and his job should not require more than ordinary and routine changes in work setting or duties. He is able to make only simple work-related decisions.

(*Id.* at 15). Plaintiff has a limited education, and is not able to perform any past relevant work. (Tr. 19). However, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy. (Tr. 20). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 21).

---

[1] Although the ALJ determined that Plaintiff could perform medium work in his prior decision, he acknowledged "new and material evidence with respect to the claimant's lumbar impairment, which warrants a somewhat more restrictive residual functional capacity than that previously found." (Tr. 11).

3

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred: (1) by inconsistently giving a treating source opinion both "significant" weight and "some" weight; (2) by improperly concluding that the same source's opinions were consistent with light work; 3) by rejecting the physical limitation opinions of Plaintiff's treating neurologist; (4) by rejecting the mental limitation opinions of Plaintiff's neurologist; and (5) by acting as his own medical authority in assessing Plaintiff's mental abilities.

Having reviewed the record in its entirety, the undersigned concludes that remand is required. Proof of disability in this case is not strong, but on the other hand, there is a lack of substantial evidence on which to affirm the Commissioner's decision.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported

---

The 2009 decision also predated the diagnosis of dementia, but the ALJ did not alter his assessment of Plaintiff's mental RFC between 2009 and 2011.

4

by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for either DIB or SSI benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform

5

exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

Plaintiff's first and second asserted errors are closely related, as are his third and fourth assertions of error. Therefore, the undersigned has combined the discussion of those particular errors.

**1. Functional Assessment Dated August 2011**

Plaintiff's first two assertions of error relate to a functional capacity evaluation ostensibly completed on August 5, 2011 by Dr. Paul Yang, which was submitted by Plaintiff's counsel following the evidentiary hearing. Dr. Yang is Plaintiff's treating primary care physician. In reality, although both the ALJ and Plaintiff refer to the evaluation as if completed by Dr. Yang, the record reflects that it was completed by a physical therapist, Scott Wright, who performed testing after receiving a referral from Dr. Yang. (Tr. 471). The record contains no indication as to whether Dr. Yang agreed or disagreed with the assessment.

In addition to the incorrect attribution of the assessment to Dr. Yang, the ALJ's analysis is unclear. In one part of his opinion the ALJ states that he is giving "[s]ignificant weight" to the functional assessment, (*see* Tr. 18), but on the next page he

6

states that he is giving only "some weight" to exactly the same assessment. (Tr. 19). Plaintiff first argues that remand is required to resolve this internal inconsistency.

Plaintiff's second asserted error highlights the problem. The ALJ stated, in the portion of his opinion in which he afforded "significant" weight to the assessment, that the assessment was "consistent with" the RFC determined by the ALJ. However, although the cover page of the assessment suggests that the Plaintiff is capable of "light" work, the body of the report reflects additional restrictions. The Grid defines "light" work as the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," but the assessment limits Plaintiff to lifting no more than 7.5 pounds frequently. Similarly, the postural limitations noted appear to be inconsistent with light work, in that the assessment limits Plaintiff to "rarely" standing. (Tr. 470-475).

Defendant urges this Court to affirm, because none of the asserted errors regarding the assessment are material. Relying first on the mistaken attribution, the Defendant notes that the physical therapist who actually completed the assessment does not qualify as an acceptable medical source, so the ALJ could have disregarded the opinion on that basis. As to the discrepancy between giving the assessment "significant" weight or only "some" weight, Defendant suggests that the latter must have been intended:

> Obviously the ALJ did not adopt Therapist Wright's opinion verbatim and gave this opinion only some weight (Tr. 19). To remand for the ALJ to change one word in his decision would be a waste of time and judicial resources.

(Doc. 9 at 6). Alternatively, Defendant argues that because the regulations "specifically state that the responsibility for assessing a claimant's RFC" remains with the ALJ, *see*

7

20 C.F.R. §416.946, any discrepancy in the weight given to a medical source RFC assessment is simply irrelevant.

The undersigned disagrees, finding remand to be appropriate. Unless the asserted error is harmless, this Court will not affirm based upon a rationale not stated or relied upon at the administrative level.  Therefore, the fact that the assessment was completed by a physical therapist is not grounds for this Court to reject it, particularly to the extent that it remains unclear whether Dr. Yang, the referring primary care physician, may have adopted it.  In addition, even though an RFC assessment is ultimately made by an ALJ, he must base that RFC upon medical evidence, and the regulatory scheme requires the ALJ to explain his analysis in a manner that is reviewable. The undersigned cannot agree that the muddled explanation was harmless, particularly given the relative lack of contrary physical RFC opinions, and the ALJ's acknowledgment that additional objective medical evidence confirmed the presence of a more significant lumbar impairment than previously recognized.  (Tr. 11).

Plaintiff offered evidence from two treating physicians. After attributing the functional assessment to one of those two physicians and offering a confusing analysis of the weight given to it, the ALJ proceeded to reject the only other opinions offered by a treating physician.  Plaintiff's treating neurologist, Dr. Usman Siddiqui, also assessed Plaintiff's functional abilities.  The ALJ rejected both the therapist's 2011 assessment and the opinions of Dr. Siddiqui in favor of the opinions of non-examining consultants. However, those consultants did not have access to Plaintiff's most recent records. Based upon a combination of errors, remand is warranted.

8

### 2. Rejection of Treating Neurologist Opinions

Plaintiff's third and fourth assertions of error concern the ALJ's analysis of the opinions of Dr. Usman Siddiqui, who completed separate mental and physical RFC assessments on the day prior to the physical therapist's assessment. Dr. Siddiqui examined and treated Plaintiff at least four times over the course of eleven months. Unlike the therapist's assessment, Dr. Siddiqui's assessments indisputably constitute the opinions of a treating physician.

The relevant regulation concerning treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The reasoning behind what has become known as "the treating physician rule" has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)). Thus, the treating physician rule requires "the ALJ to give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009). Additional regulations generally require greater weight to be given tp examining sources than to non-examining sources. *See, e.g.,* 20 C.F.R. §404.1527(c).

9

Despite the presumptive weight given to the opinions of the treating physician, if those opinions are not "well-supported" or are inconsistent with other substantial evidence, then the opinions need not be given controlling weight. Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996). In such cases, the ALJ should review additional factors to determine how much weight should be afforded to the opinion. These factors include, but are not limited to: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406; *see also* 20 C.F.R. §404.1527(c)(2). "[A] finding that a treating source medical opinion...is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

### a. Dr. Siddiqui's Physical RFC opinions

Dr. Siddiqui restricted Plaintiff to not lifting/carrying more than 5 pounds frequently and 10 pounds occasionally, standing/walking for 1 hour without interruption or 2 hours out of an 8-hour workday, and sitting less than 2 hours without interruption or 3 hours per workday. (Tr. 461-462). Dr. Siddiqui imposed additional postural limitations, based upon Plaintiff's traumatic brain injury and resulting dizziness, restless leg syndrome, weakness in his legs, and dementia, as well as Plaintiff's low back and cervical pain. (*Id.*). Although Dr. Siddiqui's physical RFC opinions were relatively consistent with those of the physical therapist, to which the ALJ alternatively gave either "significant" or "some" weight, the ALJ gave "little weight" to Dr. Siddiqui's opinions.

10

The ALJ explained that he was declining to give Dr. Siddiqui's opinions "controlling weight" because he found the assessments:

> are not supported by objective medical evidence, nor are they supported by his own treatment notes, as set forth in Exhibits B9F, B11F, and B16F. For example, despite his assessment that the claimant is limited to less than a full range of sedentary work, Dr. Siddiqui noted strength, reflexes, and sensory/motor within normal limits on examination as well as normal nerve conduction studies…. He also indicated that the claimant had only a slight memory problem and occasional panic attacks.

(Tr. 19).

Defendant argues that this explanation is sufficient. The undersigned agrees that Dr. Siddiqui's clinical records do indeed reflect the inconsistencies noted by the ALJ. Nevertheless, remand is required based upon the record as a whole, particularly in light of the ALJ's reliance on the non-examining consultants.

The ALJ gave the most weight to a state agency medical consultant who completed a physical RFC dated March 26, 2010, (Tr. 391-398), and to another consultant's affirmation of that RFC on August 4, 2010. (Tr. 390). However, the March 2010 opinion was based on a limited record that did not include many records from Plaintiff's two treating physicians, Drs. Yang and Siddiqui. In addition, the diagnosis of dementia does not appear in Plaintiff's records until September 23, 2010. (Tr. 401-403).

Both Dr. Siddiqui and the physical therapist actually examined Plaintiff. The consultants' lack of physical examination and limited records review resulted in an assessment that did not accurately reflect Plaintiff's physical limitations, but instead deemed him capable of "medium" work. Even though the ALJ stated that he was placing "significant weight" on the non-examining consultant's assessment, the ALJ still determined that Plaintiff had greater weight restrictions on lifting, carrying, and pushing/pulling than reflected in that assessment. The RFC determined by the ALJ also

11

varied from the consultant's assessment in terms of some postural limitations (except for Plaintiff's abilities to stand/walk and sit for six hours per day), and in visual limitations. In some measure, this variation reflects an appropriate review of the medical record in its entirety, including later evidence that supported additional physical limitations. However, the ambiguities concerning the varying weight given to the assessments of the only examining medical sources in the record (both the therapist's assessment and Dr. Siddiqui's relatively consistent physical assessment), support remand for further evaluation.

### b. Dr. Siddiqui's Mental RFC Versus Consulting Psychologist

Although the ALJ obviously derived some of Plaintiff's physical limitations from sources outside of the consulting physician's opinions, the ALJ does not appear to have significantly varied his assessment of Plaintiff's mental limitations from those previously determined by a non-examining consulting psychologist. The mental limitations found by the ALJ starkly contrast with the opinions of Dr. Siddiqui, who opined that Plaintiff has no ability to follow work rules, relate to co-workers, deal with the public, deal with work stresses, or to maintain attention and concentration. (Tr. 457-458). Dr. Siddiqui also rated Plaintiff as having "poor" abilities to use judgment, interact with supervisors, function independently, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability, or understand, remember, and carry out simple job instructions. (*Id.*). Dr. Siddiqui stated that his opinions were based upon his assessment of Plaintiff's impaired cognitive function due in part to his dementia, especially Plaintiff's abilities (or lack thereof) in organization and in handling distraction/interruption, as well as Plaintiff's symptoms of headaches, dizziness, anxiety, depression, social withdrawal, and memory problems. (Tr. 456-459).

In lieu of Dr. Siddiqui's August 2011 assessment, the ALJ adopted the March 20, 2010 assessment of consultant Vicki Warren, Ph.D., (Tr. 372-389), as well as an affirming psychologist's opinion dated July 22, 2010. (Tr. 371). Dr. Warren's opinions were based solely upon a records review that occurred prior to Dr. Siddiqui's assessment and treatment, prior to the diagnosis of dementia, and without benefit of most of Dr. Yang's clinical records. Dr. Warren's mental RFC form refers to the Plaintiff having been evaluated "several times for his psychological and cognitive status" in the past, including a September 2009 evaluation by a "Dr. Schwartz," which Dr. Warren rejected in its entirety. (Tr. 374). Thus, the last psychological report relied upon by Dr. Warren was dated in 2007, and does not appear in the current administrative record.[2] Dr. Warren also did not have the benefit of three third party statements in the file from Plaintiff's sister, neighbor, and family friend. (Tr. 288-290, 292, 304).

In *Blakley*, the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Id.*, 581 F.3d at 409, quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). The *Blakley* court reversed because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Id.*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)). Under *Blakley*, then, an ALJ may choose to credit the opinion of even a non-examining consultant such as

---

[2]Dr. Warren refers to three psychological reports, dated 2005, 2007, and 2009, which appear in the administrative record of Case No. 1:10-cv-599 but not in the present record.

Dr. Warren, who has not had access to a complete record, but the ALJ should articulate his reasons for doing so. If the ALJ fails to provide sufficient reasons, the opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis*.

This case contains *Blakley* error. The ALJ explained why he was giving little weight to the treating neurologist and why he did not find the third party statements to be "fully credible." (Tr. 19). However, he failed to state whether he had considered the fact that the consultants whose opinions he heavily relied upon did not have access to Plaintiff's full record. Because those consultants based their opinions upon an incomplete records review, and Plaintiff claimed to have additional physical and mental impairments since the date of the consulting assessments, the error cannot be said to be harmless.

### 3. ALJ's Opinion in Place of Medical Opinion

In his fifth claim of error, Plaintiff argues that the ALJ unfairly evaluated Plaintiff's mental RFC by acting as his own medical expert. The undersigned agrees that the ALJ crossed the line when he determined Plaintiff's mental RFC. The ALJ discussed the mini-mental status examinations conducted by Dr. Siddiqui, which suggest improvement over time, with the most recent June 2011 exam reflecting a score of 30 out of 30 questions answered correctly. (Tr. 465). Even in the face of this data, however, the treating neurologist who administered those status exams, Dr. Siddiqui, opined that Plaintiff was essentially disabled from his dementia and related cognitive impairments. As opposed to the mini mental status exam data, Dr. Siddiqui emphasized Plaintiff's cognitive difficulties with organization and in handling distraction/interruption.

14

No other medical source opinion reviewed or analyzed the impact of Plaintiff's dementia. The consulting psychologist upon whom the ALJ relied was unaware of Plaintiff's dementia, did not examine Plaintiff, and did not have access to most of the records of Plaintiff's treating physicians. The last psychological examination that she reviewed was dated prior to the diagnosis of dementia, and she specifically rejected that report. The last evaluation on which the consultant relied dated to 2007. Rather than referring Plaintiff for a new psychological evaluation or consulting a medical expert at the hearing, the ALJ appears to have inappropriately relied upon his own interpretation of Plaintiff's mini-mental status exam results in rejecting Dr. Siddiqui's opinions and in formulating Plaintiff's overall mental RFC. While an ALJ is entitled to formulate a plaintiff's residual mental capacity based upon the record as a whole, and is often required to evaluate medical records, he may exceed that authority if he interprets medical data in a way that calls for a medical source opinion.

Defendant correctly points out that the Sixth Circuit has never required an RFC finding to precisely mirror the opinion of a medical source. "Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009). And ultimately, the responsibility for determining a plaintiff's residual functional capacity rests with the ALJ. On the other hand, prior to assessing a plaintiff's residual functional capacity, the Defendant is "responsible for developing [the] complete medical history, including arranging for a consultative examination(s) if necessary. . .." 20 C.F.R. §416.945(a)(3). While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the

medical findings. "The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Com'r of Soc. Sec.,* No. 1:07-cv-51, 2008 WL 1733181, at * 13 (S.D. Ohio April 14, 2008) (Beckwith, J, citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963)).

The issue presented in this case is fairly close, because the evidence of mental disability is not overwhelming, and the ALJ's analysis ultimately may prove to be consistent with the analysis of a mental health professional or other medical source. However, the medical record in this case is so spare, and the errors significant enough in the face of that sparse overall record, that remand for further review is required.

### III. Conclusion and Recommendation

In *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994), the Sixth Circuit explained that an award of benefits should be made only if proof of disability is strong and opposing evidence is lacking, or where proof of disability is "overwhelming." *Id.* Neither is true in this case; therefore remand alone for further development of the record is required.

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff SSI be **REVERSED** because it is NOT supported by substantial evidence in the record as a whole. This case should be remanded for further review and evaluation at the administrative level, consistent with this Report and Recommendation. On remand for further development of the record, the ALJ may refer Plaintiff for a consultative psychological examination, and/or solicit other additional medical evidence if necessary, such as the testimony of a medical expert.

                                             */s Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CLINT A. DAVIS, | Case No. 1:13-cv-64 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).